Argued and submitted February 25, reversed and remanded with instructions April 21, 1980

In the Matter of the Compensation of
ROLL, claimant,
*Petitioner,*
*v.*
STATE ACCIDENT INSURANCE FUND,
*Respondent.*
(WCB No. 77-3430, CA 15835)
609 P2d 887

Charles Paulson, Portland, argued the cause and filed the brief for petitioner.

Darrell E. Bewley, Associate Counsel, State Accident Insurance Fund, Salem, argued the cause for respondent. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Salem.

Before Schwab, Chief Judge, and Thornton and Campbell, Judges.

THORNTON, J.

**THORNTON, J.**

Claimant appeals from an order of the Workers' Compensation Board, the chairman dissenting, reversing a decision of the referee allowing claimant's claim for injuries to her foot and ankles following an industrial injury to her low back. We reverse. The essential facts are as follows:

Claimant, then 30 years of age, sustained a compensable injury to her low back on April 28, 1976, while loading bags of briquets onto a truck for Waterway Terminals Company. She had worked there for seven months. She came under the care of Dr. Wallace Valley, a chiropractor and naturopathic physician, by whom she was first seen on May 3, 1976. Dr. Valley diagnosed lumbar sprain and lumbar dermatoma neuralgia. He found that claimant had a birth defect, a spina bifida occulta, which makes her spine unstable and subject to lumbar syndrome. He stated that he believed she had a disc lesion at L5-S1 which was contributing to neuralgia of the legs and radicular nerve root pressure. Claimant continued to complain of pain in the low back, right leg and buttock. Dr. Valley referred claimant to Dr. Lawrence Franks, a neurosurgeon. Dr. Franks reported that x-rays revealed some sclerosis at L5-S1 of the facet joints and a spina bifida occulta of the sacrum. He hospitalized claimant for a myelogram. Dr. Edward Clark examined her and reported that the cervical, thoracic and lumbar myelogram was normal.

Claimant was seen on October 4, 1976, by a panel of doctors of Orthopaedic Consultants. The doctors diagnosed chronic lumbar strain by history and post-status myelogram. They recommended physical therapy, exercising and a back support.

On January 19, 1977, claimant was seen by Dr. Calvin Kiest, an orthopedic physician. Dr. Kiest reported that claimant complained of low back pain with radiation down her left leg as far as her knee. He

prescribed a transcutaneous stimulator. On February 24, 1977, he reported that claimant was showing improvement with use of the stimulator and said that this proved that she had some element of organic distress, particularly in her lumbar spine. Claimant underwent an EMG (electromyelogram), which Dr. Kiest reported was negative. Dr. Kiest reported that on March 16, 1977, claimant was medically stationary but not "vocationally stationary and that she could do light or sedentary work."

On April 26, 1977, a determination order was issued granting claimant temporary total disability and an award of 15 percent of the maximum allowable for unscheduled permanent partial disability resulting from injury to the low back.

On April 27, Dr. Kiest reported that claimant still had subjective complaints with minimal objective findings except improvement of her condition by using the stimulator.

On May 1, 1977, claimant's condition took a new turn. Claimant fell and injured her left ankle while walking up a step to her house. She testified that she went to step on her left foot and suddenly had no feeling in the foot, which caused her to fall down. She stated that prior to this on some occasions she had gotten out of bed with no feeling in her leg and fallen down, but was not injured. On May 5 she went to see Dr. Kiest about her left ankle. Dr. Kiest diagnosed a sprain of the left ankle and placed the ankle in a cast. Dr. Kiest reported:

"My 'feeling' about this is that there is probably no connection between her fall and her back problem, but I have no way of proving this one way or another. I know I am not being particularly helpful but do not know how I can categorically state that a fall causing a sprain of her left ankle is due or not due to chronic low back distress. Based upon her history there is a relationship; based on objective findings, there is no relationship."

[954]

On October 2, 1977, claimant returned to the care of Dr. Valley for her back problem. On October 18, claimant sustained an injury to her right foot under similar unexpected circumstances. She had been playing in a pool tournament and while walking to her car claimant's right foot "gave out." She states that she lost control of her legs but was able to catch herself before falling. She testified on this occasion that she broke a bone in her right foot and was treated by Dr. Graham.

In December, 1977, claimant enrolled at the Callahan Center. Claimant was examined by Dr. Van Osdel, to whom she complained of constant low back pain across the waist level with occasional radiation down the back of the right buttock and right thigh ending at the posterior thigh with some tingling following the pain. She also complained of pain in the right foot since she had "cracked a bone." Dr. Van Osdel diagnosed claimant's condition as follows:

"Chronic strain of the lumbar muscles and ligaments superimposed on a 'swayback' configuration with weak abdominal muscles and increased lumbar lordosis; no objective evidence of nerve root compression or irritation; and moderate emotional disturbance with considerable over-focus on symptoms and a highly addictive scale."

He said that a fracture of the left ankle occurred away from the Callahan Center and was not industrially related.

On January 19, 1978, claimant sustained a third similar injury while walking to her car when her left leg gave way, causing her to fall and break her left ankle. She was treated by Dr. J. Hayhurst for this injury, which was diagnosed as an undisplaced fracture through the lateral mallelous. This occurred while claimant was still enrolled at the Callahan Center, causing an interruption of her evaluation there.

Claimant returned to Dr. Valley on February 7, 1978. Dr. Valley reported that with the heavy cast on the left foot and ankle there was a definite twist which

takes place at the lumbo-sacral-iliac junction upon walking because of the difference in leg length with the walking cast. He stated that this was aggravating claimant's symptoms. Dr. Valley stated that both injuries to claimant's right and left foot were contributing to the weakness of her lower back.

On April 29, 1978, Dr. Valley wrote to the State Accident Insurance Fund (SAIF) regarding their rejection of payment of a bill for claimant's leg injuries. He advised that he had treated claimant's back only. He stated that the injuries to claimant's foot this time and the first time were because of the weakness and uncertainty of her lower back. He stated that the foot fractures were from the fall due to weakness of the lower back.

Dr. Valley testified at the hearing that in his opinion, based upon a reasonable medical probability, claimant's leg injuries of May, 1977, October, 1977, and January, 1978, were caused by her low back problem of pressure on the sciatic nerve.

The hearing officer summarized the issue and the medical testimony as follows:

"Claimant testified that on each occasion when she fell and injured her foot or ankle she was simply walking along and suddenly there was 'nothing there' to stand on, her leg gave way and she fell. She stated that before her back injury of April 28, 1976, she had no such problems. I find claimant to be a credible witness.

" * * * * *

"The question is whether claimant's three injuries to her foot and ankle are related to her industrial injury to her low back. Dr. Valley, who has treated claimant since her injury is of the opinion that they are related and I find his reasoning persuasive. Dr. VanOsdel states a conclusion in his report that claimant's ankle injury is not industrially related, but I am not convinced by reading the totality of his reports that he was fully cognizant of the history regarding claimant's series of falls. Dr. Kiest states that he

[956]

cannot say for certain one way or the other. Based upon the history he feels there is a relationship and based upon objective findings he feels there is not. Claimant had no problems with her leg giving way prior to her back injury. Since her injury she has experienced a series of such problems. She has, since her injury, made consistent complaints of numbness of her leg. Based upon all of the evidence in the record I find that claimant's three injuries to her foot and ankles are related to her industrial injury."

Based on our de novo review of this record, we are of the opinion that the Board erred in refusing claimant's claim for the three injuries to her foot and ankle. We agree with the referee and the chairman of the Workers' Compensation Board that these injuries are related to her industrial injury to her low back. The leg and foot injuries are all serious injuries and not ones to be feigned or contrived. We note that the referee found claimant to be a credible witness. On appeal the Fund does not attack the witness' credibility. The Board found significant the report of the orthopedic consultants who evaluated claimant in October, 1976. This report was seven months before claimant sustained her first fall. Dr. Lawrence Franks found a suggestion of a nerve root compression and weakness of the EHL (extensor hallous longus) on both sides. Dr. Kiest, claimant's treating orthopedist before her first fall, reported that claimant's improvement from use of the transcutaneous stimulator proved she had some element of organic stress in her lumbar spine. Apparently the reports of Dr. Franks and Dr. Kiest were overlooked by the Board in its evaluation of the medical evidence.

Claimant's treating chiropractor and orthopedic physician both related her subsequent ankle and foot injuries to her original low back pain. The chiropractor thought that a weakness in claimant's right leg was due to the pressure on the sciatic nerve caused by the original back injury.

[957]

We are satisfied that claimant sustained her burden of proving a causal relationship between her original compensable injury and the subsequent falls. Reversed with instructions to reinstate the order of the referee.

Reversed and remanded with instructions.